UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                                  :
NATURAL RESOURCES DEFENSE                                         :
COUNCIL, INC., *et al.*,                                          :
                                                                  :          18 Civ. 4596 (VEC)
                                      Plaintiffs,                 :
                                                                  :
          -against-                                               :
                                                                  :
U.S. DEPARTMENT OF THE INTERIOR, *et al.*,                        :
                                                                  :
                                      Defendants.                 :
                                                                  :
------------------------------------------------------------------x
                                                                  :
NATIONAL AUDUBON SOCIETY, *et al.*,                              :
                                                                  :
                                      Plaintiffs,                 :          18 Civ. 4601 (VEC)
                                                                  :
          -against-                                               :
                                                                  :
U.S. DEPARTMENT OF THE INTERIOR, *et al.*,                        :
                                                                  :
                                      Defendants.                 :
                                                                  :
------------------------------------------------------------------x
                                                                  :
STATE OF NEW YORK, *et al.*,                                      :
                                                                  :
                                      Plaintiffs,                 :          18 Civ. 8084 (VEC)
                                                                  :
          -against-                                               :
                                                                  :
U.S. DEPARTMENT OF THE INTERIOR, *et al.*,                        :
                                                                  :
                                      Defendants.                 :
                                                                  :
------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW OF DEFENDANTS U.S. DEPARTMENT OF THE
INTERIOR, U.S. FISH AND WILDLIFE SERVICE, AND DANIEL JORJANI IN
FURTHER SUPPORT OF THEIR MOTIONS TO DISMISS THE COMPLAINTS**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

ANDREW E. KRAUSE                        *Attorney for Defendants*
Assistant U.S. Attorney
– Of Counsel –                          Telephone:  (212) 637-2769

**TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...........................................................................................................................2

I.  THE COURT LACKS SUBJECT MATTER JURISDICTION
    BECAUSE PLAINTIFFS FAIL TO SATISFY THE THRESHOLD
    REQUIREMENTS FOR STANDING TO PURSUE THEIR CLAIMS ................2

    A.  Plaintiffs Fail to Allege Any Actual or Imminent Injury-in-Fact ...............3

        1.  The NRDC Plaintiffs and Audubon Plaintiffs Do Not
            Satisfy the Injury-in-Fact Requirement for Organizational
            Standing ........................................................................................3

        2.  The NRDC Plaintiffs and Audubon Plaintiffs Do Not Satisfy
            the Injury-in-Fact Requirement for Associational Standing ...........4

        3.  The States Do Not Adequately Allege That They
            Have Sustained an Injury in Fact .....................................................6

    B.  An Order From the Court Will Not Redress Plaintiffs'
        Alleged Injuries ...........................................................................................7

II. THE COMPLAINTS FAIL TO STATE A CLAIM
    PURSUANT TO THE APA BECAUSE THEY DO NOT
    ALLEGE ANY FINAL AGENCY ACTION ........................................................10

    A.  Neither Opinion M-37050 Nor the Internal FWS Guidance Are the
        Consummation of an Agency Decision-Making Process ..........................10

    B.  Neither Opinion M-37050 Nor the Internal FWS Guidance Fixed
        Rights or Obligations or Altered the Applicable Legal Regime ...............13

III. PLAINTIFFS' CLAIMS ARE NOT RIPE FOR REVIEW ..................................15

IV. THE TWO PROCEDURAL CLAIMS INCLUDED ONLY IN THE
    AUDUBON COMPLAINT ALSO SHOULD BE DISMISSED .........................16

    A.  The Notice-and-Comment Requirements of the APA
        Are Not Applicable to Opinion M-37050 .................................................16

    B.  The Audubon Plaintiffs' NEPA Claim Also Should Be Dismissed ..........17

CONCLUSION ......................................................................................................................19

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE**

*Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*,
    738 F.3d 387 (D.C. Cir. 2013) ........................................................................ 13

*Baur v. Veneman*,
    352 F.3d 625 (2d Cir. 2003) ................................................................... 2, 4, 7

*Bennett v. Spear*,
    520 U.S. 154 (1997) ........................................................................................ 13

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
    868 F.3d 104 (2d Cir. 2017) ............................................................................. 3

*Chem. Mfrs. Ass'n v. EPA*,
    26 F. Supp. 2d 180 (D.D.C. 1998) .................................................................. 12

*Citizens Against Casino Gambling v. Chaudhuri*,
    802 F.3d 267 (2d Cir. 2015) ............................................................................ 10

*Citizens for Responsibility & Ethics in Washington v. Trump*,
    276 F. Supp. 3d 174 (S.D.N.Y. 2017) .............................................................. 4

*Ctr. for Auto Safety & Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
    452 F.3d 798 (D.C. Cir. 2006) ......................................................................... 14

*Ctr. for Food Safety v. Price*,
    No. 17 Civ. 3833 (VSB), 2018 U.S. Dist. LEXIS 155794 (S.D.N.Y. Sept. 12, 2018) ....... 4

*Duke Power Co. v. Carolina Envtl. Study Group, Inc.*,
    438 U.S. 59 (1978) .......................................................................................... 15

*Frozen Food Express v. United States*,
    351 U.S. 40 (1956) .......................................................................................... 13

*Fund for Animals v. Norton*,
    365 F. Supp. 2d 394 (S.D.N.Y. 2005) .............................................................. 10

*Humane Soc'y of the U.S. v. Glickman*,
    217 F.3d 882 (D.C. Cir. 2000) ......................................................................... 14

*Int'l Union, United Auto., Aerospace & Agri. Implement Workers of Am. v. Brock*,
    783 F.2d 237 (D.C. Cir. 1986) .................................................................. 11, 12

*Jana-Rock Const., Inc. v. N.Y. State Dep't of Econ. Dev.*,
    438 F.3d 195 (2d Cir. 2006)............................................................................. 9

*Linda R. S. v. Richard D.*,
    410 U.S. 614 (1973)..................................................................................... 5

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..................................................................................... 6

*Mahler v. U.S. Forest Serv.*,
    927 F. Supp. 1559 (S.D. Ind. 1996) .............................................................. 14

*McMaster v. United States*,
    731 F.3d 881 (9th Cir. 2013) ....................................................................... 12

*N.Y. State Elec. & Gas Corp. v. Saranac Power Partners, L.P.*,
    267 F.3d 128 (2d Cir. 2001)......................................................................... 16

*Nat'l Ass'n of Home Builders v. Norton*,
    415 F.3d 8 (D.C. Cir. 2005) ......................................................................... 14

*Nat'l Park Hospitality Ass'n v. U.S. Dep't of the Interior*,
    538 U.S. 803 (2003).................................................................................... 15

*Newton Cnty. Wildlife Ass'n v. U.S. Forest Serv.*,
    113 F.3d 110 (8th Cir. 1997) .................................................................... 7, 14

*Pharm. Research & Mfrs. of Am. v. U.S. Dep't of Health and Human Svcs.*,
    138 F. Supp. 3d 31 (D.D.C. 2015) ................................................................ 13

*Philip Morris USA Inc. v. FDA*,
    202 F. Supp. 3d 31 (D.D.C. 2016) ................................................................ 13

*Protect Our Cmtys. Found. v. Jewell*,
    825 F.3d 571 (9th Cir. 2016) ....................................................................... 10

*Renal Physicians Ass'n v. U.S. Dep't of Health and Human Svcs.*,
    489 F.3d 1267 (D.C. Cir. 2007).................................................................... 8

*Sackett v. EPA*,
    566 U.S. 120 (2012).................................................................................... 13

*Seattle Audubon Society v. Evans*,
    952 F.2d 297 (9th Cir. 1991) ....................................................................... 14

*Sierra Club v. Morton*,
    405 U.S. 727 (1972)..............................................................................4

*Strubel v. Comenity Bank*,
    842 F.3d 181 (2d Cir.2016)...............................................................6

*Town of Babylon v. Fed. Hous. Fin. Agency*,
    699 F.3d 221 (2d Cir. 2012)............................................................8, 9

*U.S. Army Corps of Engineers v. Hawkes Co.*,
    136 S. Ct. 1807 (2016)...............................................................11, 14

*United States v. Apollo Energies, Inc.*,
    611 F.3d 679 (10th Cir. 2010) .........................................................7

*United States v. CITGO Petroleum Corp.*,
    801 F.3d 477 (5th Cir. 2015) ...........................................................7

*United States v. FMC Corp.*,
    572 F.2d 902 (2d Cir. 1978)............................................................7

*White v. Shalala*,
    7 F.3d 296 (2d Cir. 1993)..........................................................16, 17

**STATUTES**

5 U.S.C. § 553(b)(3)(A).............................................................................16

42 U.S.C. § 4332(2) ..................................................................................17

**REGULATIONS**

43 C.F.R. § 46.100....................................................................................18

43 C.F.R. § 46.205..............................................................................17, 18

43 C.F.R. § 46.210....................................................................................18

43 C.F.R. § 46.215....................................................................................18

Defendants U.S. Department of the Interior ("DOI"), U.S. Fish and Wildlife Service ("FWS"), and Daniel Jorjani (collectively "Defendants"), by their attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submit this reply memorandum of law in further support of their motions to dismiss.  *See* 18 Civ. 4596 (VEC) ("NRDC Action") Dkt. Nos. 26-28; 18 Civ. 4601 (VEC) ("Audubon Action") Dkt. Nos. 29-31; 18 Civ. 8084 (VEC) ("States' Action") Dkt. Nos. 44-46.[1]

## PRELIMINARY STATEMENT

Plaintiffs' lawsuits are an effort to reverse Defendants' abstract legal interpretation of the MBTA—not tied to any specific project, program, or permit—in order to promote a particular approach to enforcement of that criminal statute.  In each of the three actions, Plaintiffs' claims are predicated on the speculative and conclusory allegation that as a result of Defendants' issuance of Opinion M-37050 and the internal FWS Guidance memorandum, entities will be less constrained by the prospect of the criminal penalties of the MBTA, and will act in ways that will harm migratory bird populations.  The timing of these challenges is improper, however, and as a result, Plaintiffs do not satisfy various threshold pleading obligations.

Plaintiffs' claims are premature because they do not adequately allege that any concrete or particularized harms have occurred, and fail to allege how even a favorable outcome in these matters would ameliorate their alleged injuries.  Instead, Plaintiffs' allegations are premised on speculative assumptions about how potentially regulated parties will adjust their conduct in response to Defendants' guidance documents, rather than specific examples of impacts to migratory bird populations.  Even at the pleading stage, these allegations do not suffice to satisfy

---

[1] Defendants filed a single memorandum of law in support of their motions to dismiss in all three actions.  *See* NRDC Action Dkt. No. 27; Audubon Action Dkt. No. 30; States' Action Dkt. No. 45 (hereinafter "Defs. Mem.").

the injury-in-fact requirement of the standing inquiry.  Similarly, the only way that a favorable

decision for Plaintiffs in these cases would redress their alleged injuries is if third-party actors

who purportedly modified their conduct in response to the M-Opinion and internal FWS

Guidance were to return to acting as they did before the challenged actions were taken.  But it is

entirely speculative as to whether a favorable decision for Plaintiffs would prompt such a

change, and no such inference is warranted from Plaintiffs' allegations.

 In addition, Plaintiffs' claims are premature because neither Opinion M-37050 nor the

internal FWS Guidance constitutes a final agency action within the meaning of the APA.  The

legal analysis embodied in Opinion M-37050 and further communicated via the internal FWS

Guidance is not the consummation of an agency decision-making process—any APA challenge

should arise from future decisions regarding specific matters based on Defendants' application of

Opinion M-37050.  And unlike other cases where pre-enforcement agency actions were deemed

final for purposes of APA review, neither the M-Opinion nor the internal FWS Guidance

imposed new legal obligations on Plaintiffs or directly and immediately affected Plaintiffs' day-

to-day business.

 For all of the reasons set forth below and in Defendants' opening memorandum of law,

Plaintiffs' complaints should be dismissed.

## ARGUMENT

## I. THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS FAIL TO SATISFY THE THRESHOLD REQUIREMENTS FOR STANDING TO PURSUE THEIR CLAIMS

 Even under the less stringent requirements for alleging standing at the pleading stage—

which were identified in Defendants' opening memorandum of law, *see* Defs. Mem. at 11-12—

Plaintiffs "cannot rely solely on conclusory allegations of injury or ask the court to draw

unwarranted inferences in order to find standing."  *Baur v. Veneman*, 352 F.3d 625, 637 (2d Cir.

2003).  Plaintiffs have failed to allege an imminent injury-in-fact, a causal connection between the challenged actions and their alleged injuries, or that a favorable decision from the Court would provide redress for their claimed harms, and their complaints should be dismissed for lack of standing.

### A.      Plaintiffs Fail to Allege Any Actual or Imminent Injury-in-Fact

#### 1.      The NRDC Plaintiffs and Audubon Plaintiffs Do Not Satisfy the Injury-in-Fact Requirement for Organizational Standing

Neither the NRDC Plaintiffs nor the Audubon Plaintiffs have adequately substantiated their purported organizational standing to pursue their claims.  *See* NRDC Action Dkt. No. 37 ("NRDC Mem.") at 9 n.3; Audubon Action Dkt. No. 34 ("Audubon Mem.") at 19-21.  In *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 110-11 (2d Cir. 2017), the activities of the plaintiff organization were "impaired" for purposes of standing because enforcement of the ordinance at issue would have led to the physical dispersal of the individuals the plaintiff group was engaged with organizing and subjected advocates to a risk of erroneous arrest, both of which would have "impeded . . . the organization's ability to carry out its responsibilities."  Additionally, the organization would have been forced to divert resources away from its "other current activities" to a new and different set of activities in response to the ordinance.  *See id.*  These are the type and character of impairments that can confer organizational standing.

To explain the alleged impairment they have experienced here, the NRDC Plaintiffs point principally to the allegation that the issuance of Opinion M-37050 "undermined previous efforts . . . to reduce incidental take of migratory birds," *see* NRDC Compl. ¶ 72, a limited, backward-looking rationale that does not rise to the level of the impairments that conferred standing in *Centro de la Comunidad*.  And while the Audubon Plaintiffs emphasize their

substantial (and undisputed) commitment to bird conservation, *see* Audubon Mem. at 19-20,

injury-in-fact may not be based on an entity's "mere interest in a problem, no matter how

longstanding the interest and no matter how qualified the organization is in evaluating the

problem." *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972).

Moreover, the alleged diversions of resources by the plaintiff groups from one type of

conservation effort to a different type of conservation effort are not sufficient to confer

organizational standing, because the plaintiff organizations' alleged reallocations of funds are not

the types of new and different expenditures required for standing purposes. *See Ctr. for Food*

*Safety v. Price*, No. 17 Civ. 3833 (VSB), 2018 U.S. Dist. LEXIS 155794, *14 (S.D.N.Y. Sept.

12, 2018) (alleged injuries based on diversion of resources cannot serve as a basis for standing

when the "purported injuries are not sufficiently distinct from the general mission of the

organizations at issue"); *Citizens for Responsibility & Ethics in Washington v. Trump*, 276 F.

Supp. 3d 174, 191-92 (S.D.N.Y. 2017) ("CREW is . . . not wasting resources by educating the

public and issuing statements concerning the effects of Defendant's alleged constitutional

violations . . . [because] this is exactly how an organization like CREW spends its resources in

the ordinary course.").[2]

### 2.    The NRDC Plaintiffs and Audubon Plaintiffs Do Not Satisfy the Injury-in-Fact Requirement for Associational Standing

The minimum threshold requirements for standing require Plaintiffs to allege an injury

that is "concrete and particularized as well as actual or imminent, not conjectural or

hypothetical." *Baur*, 352 F.3d at 632 (quotation marks omitted).  At bottom, the plaintiff

---

[2] Plaintiffs either were silent in response to Defendants' arguments about the concept of "informational standing," *see* Defs. Mem. at 16, or disclaimed any attempt to assert this as an independent basis for standing, *see* Audubon Mem. at 22 n.10.  Accordingly, Plaintiffs cannot rely on the concept of "informational standing" to satisfy their pleading requirements.

organizations' core allegations of injury—that Opinion M-37050 and the internal FWS Guidance memorandum have and will result in the deaths of many migratory birds that would have been avoided were it not for these documents, and that their members have been injured as a result—are too speculative to satisfy this standard.[3]  These plaintiffs do not dispute that the alleged injuries to their members are predicated on the potential conduct of non-party entities subject to enforcement actions under the MBTA; they simply argue that the future conduct of these entities will, inevitably, lead to the harms they allege.  *See* NRDC Mem. at 6-7; Audubon Mem. at 17-19.[4]  The plaintiff organizations urge the Court to resort to "common sense" to conclude that companies, relying on Opinion M-37050, will "no longer spend money implementing measures that otherwise would have protected birds."  *See* NRDC Mem. at 7; Audubon Mem. at 18; States' Mem. at 12-13.  Yet in the one specific example in the complaints where migratory birds allegedly have been negatively affected by the M-Opinion and the internal FWS Guidance, the third-party actor apparently *did* undertake voluntary conservation measures for migratory birds. *See* NRDC Action Dkt. No. 28-3 (Krause Decl. Ex. C) at 1; *see also* NRDC Action Dkt. No. 28-

---

[3] Other than briefly reiterating select allegations from their complaints, Plaintiffs do not attempt to explain how their speculative and attenuated assertions about potential diminution of penalties previously collected by FWS for MBTA violations can serve as a basis for their alleged injuries in fact.  *See* NRDC Mem. at 3; States' Action Dkt. No. 54 ("States' Mem.") at 6, 8.

[4] The Audubon Plaintiffs also suggest that a focus of the injury-in-fact analysis should be "the behavior of the government employees responsible for implementing the MBTA." Audubon Mem. at 17-18.  This cannot be correct.  Plaintiffs' alleged injury would only materialize if there were an actual decrease in migratory bird populations, regardless of the legal interpretation and guidance provided by Defendants with respect to the proper exercise of MBTA enforcement authority.  And no plaintiff can claim to have standing based on an individual decision by a government employee or agency as to whether or not to pursue criminal prosecution.  *See Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution").

2 (Krause Decl. Ex. B) at 1 (FWS Guidance document states that "[m]igratory bird conservation remains an integral part of [the agency's] mission").

Plaintiffs' complaints offer virtually no specific allegations about actual, concrete harms to migratory birds, and, consequently, virtually no specific allegations about any actual, concrete harms suffered by members of the plaintiff organizations. Though "general factual allegations of injury resulting from the defendant's conduct *may* suffice" at the pleading stage, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (emphasis added), Plaintiffs' conjecture about the potential impact of Opinion M-37050 on migratory bird populations, and the resultant impact on the members of the plaintiff organizations, depends on too many assumptions about how potential violators of the MBTA will alter their behavior, and further assumptions about how that change in behavior will affect migratory birds. These limited and conclusory allegations of injury are insufficient to allege a concrete and particularized harm resulting from Opinion M-37050 or the internal FWS Guidance, and the plaintiff organizations therefore lack standing to pursue any of their claims.[5] *See also* Defs. Mem. at 19 (the lack of a concrete and particularized injury from the substantive actions also requires dismissal of the Audubon Plaintiffs' procedural claims); *see Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016).

### 3.    The States Do Not Adequately Allege That They Have Sustained an Injury in Fact

The allegations of injury in fact in the States' Complaint are predicated on the same types of speculative assumptions about the potential impact of Opinion M-37050 on migratory bird populations that fail to satisfy the minimum pleading requirements for standing. If anything, the

---

[5] These necessary assumptions about the potential conduct of third party entities are also fatal to Plaintiffs' attempt to allege a sufficient causal connection between Opinion M-37050 and the internal FWS Guidance and their alleged injuries. *See* Defs. Mem. at 20-21.

States' complaint—which fails to identify any specific project that negatively affected migratory bird populations in any of the plaintiff States—would require the Court to draw even more attenuated and unwarranted inferences to find standing.  For the same reasons set forth above, the State Plaintiffs' allegations about potential future consequences from anticipated impacts on bird populations are not sufficiently "concrete and particularized" to satisfy the obligation to allege an injury in fact from the issuance of Opinion M-37050.  *Baur*, 352 F.3d at 632.

### B.       An Order From the Court Will Not Redress Plaintiffs' Alleged Injuries

Plaintiffs' complaints fail to satisfy the redressability requirement for standing because a favorable decision on their claims would, at most, return third parties potentially subject to enforcement under the MBTA to the patchwork of conflicting legal interpretations as to whether "incidental take" of migratory birds constitutes a violation of the statute.  *See* Opinion M-37050 at 13-17; Defs. Mem. at 6-7; *compare United States v. CITGO Petroleum Corp.*, 801 F.3d 477, 488-89 (5th Cir. 2015) *and Newton Cnty. Wildlife Ass'n v. U.S. Forest Serv.*, 113 F.3d 110, 115 (8th Cir. 1997) *with United States v. FMC Corp.*, 572 F.2d 902, 908 (2d Cir. 1978) *and United States v. Apollo Energies, Inc.*, 611 F.3d 679, 689-90 (10th Cir. 2010).  Because of the unsettled legal landscape that existed before the issuance of Opinion M-37050, it is not clear that any decision in these cases would restore what the NRDC Plaintiffs describe as the "deterrent effect" of the statute, *see* NRDC Mem. at 11, or what the State Plaintiffs describe as a "strong federal backstop," *see* States' Compl. ¶ 38, as it pertains to incidental take, because the legality or illegality of incidental take would not be clearly resolved.

Accordingly, it is more appropriate to look to cases where courts have considered how third parties would conduct themselves in the event of a favorable decision for Plaintiffs, *see* Defs. Mem. at 24-26, than to focus exclusively on the narrower set of cases where "the relief sought by Plaintiffs would make the injurious conduct of third parties . . . illegal," NRDC Mem.

7

at 12.  As detailed in Defendants' opening memorandum, courts may not simply infer or predict that non-parties will act in a way that will redress the plaintiffs' injury, and courts have rejected the idea that vacating a government agency's action will cause private parties to return to acting in ways they acted before the challenged action was taken.[6]  *See* Defs. Mem. at 24-26.  Indeed, courts have found in certain instances that non-party actors would be "likely to continue to rely" on a course of action approved by an agency, even if that course of action were to be invalidated. *See Renal Physicians Ass'n v. U.S. Dep't of Health and Human Svcs.*, 489 F.3d 1267, 1278 (D.C. Cir. 2007).  This is because the non-party actors would "know[ ] with some assurance that the agency will be likely to accept" the course of action, given that the agency had approved of it previously.  *Id.*  So too for parties potentially subject to MBTA enforcement actions—those parties can forecast with "some assurance" the likelihood of facing discretionary enforcement actions from Defendants for "incidental take" of migratory birds.  Even if any such entity has changed its practices as a result of the issuance of Opinion M-37050, there is no basis to infer that those entities would revert to prior practices in the event of a favorable decision for the Plaintiffs in these lawsuits.  *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 230 (2d Cir. 2012) ("A return to the *status quo ante* by the banks after vacatur of the Bulletin would be a likely result only if the banks calculated the risks and benefits exactly as they are alleged to be by [plaintiff].  That is not a necessary result.").

---

[6] Again in this section, the Audubon Plaintiffs argue that the Court should focus on the enforcement direction provided by Opinion M-37050 and the internal FWS Guidance to "Defendants' own employees."  Audubon Mem. at 23.  But it is unclear how this factors in to the redressability analysis, where the relevant question is whether a favorable result for Plaintiffs in these cases would cause third parties to act in ways that would be less harmful to migratory birds.  No order from the Court could compel Defendants or their employees to take, or refrain from taking, particular enforcement actions.

There is nothing "troubling," States Mem. at 14, about the point that Defendants will retain broad discretion to define agency priorities for enforcement of the MBTA regardless of the outcome of this lawsuit, and Defendants' discussion of their discretionary enforcement authority is in no way a "threat," *id.*, or a suggestion that the Defendants would act unlawfully.  *See* Defs. Mem. at 23-24.  Nor do Defendants contend that redressability is foreclosed merely as a result of the discretionary enforcement authority that they will maintain, *see* NRDC Mem. at 12, irrespective of the outcome of these lawsuits.  Rather, the significance of Defendants' ongoing discretionary enforcement authority is that potentially regulated third parties—whose potential conduct forms the basis of Plaintiffs' claimed injuries—will make decisions about future conduct with an understanding of Defendants' discretionary authority, and informed by all actions that Defendants have taken with respect to MBTA enforcement.  Plaintiffs offer nothing more than speculation to suggest that any of these entities will approach the prospect of MBTA enforcement differently even in the potential absence of Opinion M-37050.  *See Town of Babylon*, 699 F.3d at 229 (complaints failed to allege redressability where pleadings lacked any allegation that regulated entities "would act differently" or "would alter current practices" if agency document at issue were vacated).

In order for Plaintiffs to adequately allege that their injuries would be redressed by a court order in these cases, they must sufficiently allege a "substantial likelihood" that the Court's decision would lead to conduct that would no longer cause the alleged harm to migratory birds. *See Jana-Rock Const., Inc. v. N.Y. State Dep't of Econ. Dev.*, 438 F.3d 195, 204 (2d Cir. 2006). Plaintiffs' complaints do not satisfy this requirement, and their complaints should be dismissed for this shortcoming.

9

## II. THE COMPLAINTS FAIL TO STATE A CLAIM PURSUANT TO THE APA BECAUSE THEY DO NOT ALLEGE ANY FINAL AGENCY ACTION

Opinion M-37050 is a legal interpretation of the MBTA—it is DOI's effort to clarify the proper understanding of the statute and to orient agency personnel as to the appropriate scope of the agency's enforcement authority. But fundamentally, the M-Opinion and the internal FWS Guidance are only the initial steps in DOI's framework for applying the MBTA across a variety of contexts. These documents do not represent the completion of the agency's decision-making process—final agency actions will take the form of subsequent case-by-case decisions based upon the legal interpretation set forth in the M-Opinion. *See Citizens Against Casino Gambling v. Chaudhuri*, 802 F.3d 267, 277 n.8 (2d Cir. 2015) ("After an M-Opinion is completed, the DOI will take action consistent with the legal interpretation explained by the Solicitor." (internal quotation marks omitted)). The issuance of Opinion M-37050 and the internal FWS Guidance were not final agency actions, and the complaints should be dismissed for this separate and independent reason.

### A. Neither Opinion M-37050 Nor the Internal FWS Guidance Are the Consummation of an Agency Decision-Making Process

Opinion M-37050 and the internal FWS Guidance are not final agency actions because they are not DOI's final determination on any specific matter. Various courts have held that "private plaintiffs may, via the [APA], pursue claims against agencies for failure to adhere to the MBTA's terms." *Fund for Animals v. Norton*, 365 F. Supp. 2d 394, 408 (S.D.N.Y. 2005); *see Protect Our Cmtys. Found. v. Jewell*, 825 F.3d 571, 585 (9th Cir. 2016) ("Through the APA's prohibition against unlawful agency action, a plaintiff may bring a civil suit to compel agency compliance with the MBTA."). In *Fund for Animals*, plaintiffs brought an APA challenge claiming that a "public resource depredation order" that authorized certain measures for "population control" of the double-crested cormorant violated the MBTA. 365 F. Supp. 2d at

403-04.  It is this type of agency action—a decision applying the relevant legal standards to specific facts in specific circumstances—that reflects the consummation of the agency's decision-making process, and is properly subject to APA review.  Requiring that Plaintiffs wait for a proper final agency action applying the legal interpretation set forth in Opinion M-37050 to a specific and concrete set of facts would not be tantamount to "permanently withholding judicial review of the agency's interpretation of the statute." *Int'l Union, United Auto., Aerospace & Agri. Implement Workers of Am. v. Brock*, 783 F.2d 237, 250 (D.C. Cir. 1986) (emphasis removed).  Rather, it would ensure that the APA challenge presented a non-speculative controversy regarding the effect of the M-Opinion on migratory bird populations.  This concept is well illustrated by the Supreme Court's decision in *U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1812-13 (2016), which involved a challenge to a specific determination affecting the specific rights of particular property owners—nothing remotely like Plaintiffs' broad-based challenge to Defendants' legal interpretation of a statute.  The conflicting body of law around the meaning of relevant provisions of the MBTA has developed in the context of either criminal enforcement decisions or other types of specific, definitive agency actions that affect migratory birds, *see* Defs. Mem. at 30-31, and those are the types of actions that are appropriate vehicles for judicial review of Defendants' MBTA decision-making.

The NRDC Plaintiffs argue that courts have "frequently held that an agency's interpretation of its governing statute, with the expectation that regulated parties will conform to and rely on this interpretation, is final agency action fit for judicial review." *Int'l Union*, 783 F.2d at 248; NRDC Mem. at 23.  But in the immediately preceding sentence of that decision, the *International Union* court explains an agency's two methods for formulating binding policy that will have the force of law: "through rulemaking procedures by which it promulgates substantive

11

rules, or through adjudications which constitute binding precedent." *Id.* The agency decision at issue in *International Union* was an adjudication of a case between specific parties, not an abstract legal interpretation devoid from application to specific circumstances, and the court plainly was not contemplating agency actions like Opinion M-37050 or the internal FWS Guidance in its broad statement about final agency action. *See Int'l Union* at 248; *see also McMaster v. United States*, 731 F.3d 881, 891 (9th Cir. 2013) (M-Opinions "cannot properly be viewed as an administrative agency interpretation of [a] statute that has the force of law" (quotation marks and alterations omitted)).

The fact that DOI's Departmental Manual makes M-Opinions "binding" on the agency as a whole also does not automatically transform every M-Opinion into a final agency action for purposes of APA review.[7] Even to the extent Opinion M-37050 is to be followed by agency personnel, the M-Opinion itself still "does not conclude [Defendants'] involvement with any particular case," and is best understood as "a starting point that states principles intended to guide *future* agency action." *Chem. Mfrs. Ass'n v. EPA*, 26 F. Supp. 2d 180, 183 (D.D.C. 1998). Indeed, the internal FWS Guidance—another interlocutory issuance designed to inform agency officials as to the scope of enforcement authority going forward—illustrates how the M-Opinion will be applied in the course of agency actions with respect to specific projects and applications. These future applications of the legal interpretation set forth in Opinion M-37050, and not the legal interpretation itself, will serve as the consummation of agency decision-making for purposes of the APA's final agency action requirement.

---

[7] The NRDC Plaintiffs specifically note that they "do not contend that every M-Opinion is final agency action." NRDC Mem. at 21.

**B.      Neither Opinion M-37050 Nor the Internal FWS Guidance Fixed Rights or Obligations or Altered the Applicable Legal Regime**

Opinion M-37050 and the internal FWS Guidance also are not reviewable under the APA because they are not actions from which legal rights or obligations were determined or from which legal consequences flowed.  "[I]nterpretive rules, guidance policies, and other general agency statements that lack the force of law 'generally do not qualify' as a final agency action." *Pharm. Research & Mfrs. of Am. v. U.S. Dep't of Health and Human Svcs.*, 138 F. Supp. 3d 31, 41 (D.D.C. 2015) (quoting *Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*, 738 F.3d 387, 395 (D.C. Cir. 2013)).  This general proposition should be applied here as well. Opinion M-37050 and the internal FWS Guidance do not have the type of direct and immediate effects required to satisfy the second prong of the final agency action analysis in *Bennett v. Spear*, 520 U.S. 154 (1997).

Plaintiffs cite several cases where courts have held that pre-enforcement orders or interpretative rules were examples of final agency action.  *See* NRDC Mem. at 20; States' Mem. at 19-20.  In each of these instances, however, the plaintiffs challenging the agency actions were individuals or entities who themselves faced immediate practical burdens from the prospect of future agency enforcement based on the contested action.  *See, e.g., Sackett v. EPA*, 566 U.S. 120, 125-26 (2012) (individuals challenging EPA that directed them to take specific actions on their property); *Frozen Food Express v. United States*, 351 U.S. 40, 44 (1956) (carriers and shippers at risk of criminal penalties if they did not respect Commission's order); *Philip Morris USA Inc. v. FDA*, 202 F. Supp. 3d 31, 48 (D.D.C. 2016) (companies faced with the choice of either complying with FDA interpretation or risking possible enforcement action); *Pharm. Research & Mfrs. of Am.,* 138 F. Supp. 3d at 43 (plaintiff manufacturers face "painful choice of complying with HHS's interpretation or risking the possibility of an enforcement action at an

uncertain point in the future"); *Hawkes*, 136 S. Ct. at 1815 ("parties need not await enforcement

proceedings before challenging final agency action where such proceedings carry the risk of

serious criminal and civil penalties" (internal quotation marks omitted)).

This is decidedly not the posture facing Plaintiffs here—Opinion M-37050 and the

internal FWS Guidance did not impose any new legal obligations on Plaintiffs, nor did they have

a direct and immediate effect on the day-to-day business of Plaintiffs. And the possibility that

either document could alter the conduct of potentially regulated parties, which could in turn

potentially affect the interests of the Plaintiffs, is not sufficient to satisfy the second prong of

*Bennett*. *See Ctr. for Auto Safety & Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,

452 F.3d 798, 811 (D.C. Cir. 2006) (although guidelines may have practical consequences, in

that third parties voluntarily follow them, this does not equate to legal consequences); *Nat'l

Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005) ("If the practical effect of the

agency action is not a certain change in the legal obligations of a party, the action is non-final for

the purpose of judicial review.").

Courts have ruled on various APA claims tied to the MBTA in situations involving

challenges to specific, concrete agency actions, including actions by agencies not bound by the

DOI Departmental Memorandum regarding the applicability of M-Opinions. *See, e.g.*, *Newton

Cnty.*, 113 F.3d at 112 (challenge to "final agency actions approving . . . four timber sales

between August 23, 1994 and September 12, 1995"); *Seattle Audubon Soc'y v. Evans*, 952 F.2d

297, 301 (9th Cir. 1991) (challenge to timber sales by Forest Service); *Humane Soc'y of the U.S.

v. Glickman*, 217 F.3d 882, 884 (D.C. Cir. 2000) (challenge to Department of Agriculture's

"Integrated Goose Management Program"); *Mahler v. U.S. Forest Serv.*, 927 F. Supp. 1559,

1566 (S.D. Ind. 1996) (challenge to "Forest Service's decision to conduct a salvage sale of fifty

acres of red pine trees").  It is these types of decisions, or particular determinations by

Defendants made in reliance on the legal interpretation set forth in Opinion M-37050, that would

satisfy the final agency action requirement for APA review and that should be the vehicle for any

challenges to Defendants' interpretation of the MBTA.

## III.    PLAINTIFFS' CLAIMS ARE NOT RIPE FOR REVIEW

The appropriate time to challenge Defendants' legal interpretation of the scope of the

MBTA is not in response to the M-Opinion and internal FWS Guidance—which are not tied to a

specific action that authorizes the "incidental take" of migratory birds—but rather in connection

with a specific agency action implementing this legal analysis.  *See Nat'l Park Hospitality Ass'n*

*v. U.S. Dep't of the Interior*, 538 U.S. 803, 808 (2003) ("[A] regulation is not ordinarily

considered the type of agency action 'ripe' for judicial review under the [APA] until the scope of

the controversy has been reduced to more manageable proportions, and its factual components

fleshed out, by some concrete action applying the regulation to the claimant's situation in a

fashion that harms or threatens to harm him.").  And Plaintiffs' assertion that their challenge to

Opinion M-37050 is a pure legal question, *see* NRDC Mem. at 24; States' Mem. at 21, is not

dispositive of the ripeness inquiry.  *Nat'l Park Hospitality Ass'n*, 538 U.S. at 812 ("Although the

question presented here is 'a purely legal one' . . . we nevertheless believe that further factual

development would 'significantly advance our ability to deal with the legal issues

presented . . . .'") (quoting *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59,

82 (1978) (internal citation omitted)).

As set forth in Defendants' opening memorandum, delayed review would not cause

hardship to the Plaintiffs, judicial intervention would be premature, and courts would benefit

from being able to address these issues in the context of a particular factual scenario rather than

abstract legal interpretation.  *See* Defs. Mem. at 34-36.  For all of these reasons, Plaintiffs'

claims should be dismissed as unripe.[8]

## IV.  THE TWO PROCEDURAL CLAIMS INCLUDED ONLY IN THE AUDUBON COMPLAINT ALSO SHOULD BE DISMISSED

### A.  The Notice-and-Comment Requirements of the APA Are Not Applicable to Opinion M-37050

There is no dispute that the notice-and-comment requirements of the APA apply only to a

limited set of final agency actions, and specifically do not apply to "interpretative rules, general

statements of policy, or rules of agency organization, procedure, or practice."  5 U.S.C.

§ 553(b)(3)(A).  The Audubon Plaintiffs' notice-and-comment claim should be dismissed

because Defendants' issuance of Opinion M-37050 is not a final agency action at all.  But to the

extent the Court determines that the Plaintiffs have adequately alleged that Defendants' legal

interpretation of the MBTA is a final agency action, that action is at most an interpretative rule

that is exempt from notice-and-comment requirements.

The Audubon Plaintiffs do not address the most relevant Second Circuit precedent on this

point—*White v. Shalala*, 7 F.3d 296, 304 (2d Cir. 1993)—which held that an agency's

explanation of an existing statutory provision "is a paradigmatic example of an interpretative

rule," and therefore not subject to the APA's notice-and-comment provisions.  *See* Defs. Mem. at

37-38; Audubon Mem. at 30; *N.Y. State Elec. & Gas Corp. v. Saranac Power Partners, L.P.*, 267

F.3d 128, 131 (2d Cir. 2001) (defining "interpretative rules" as those that "clarify an existing

statute or regulation").  This principle applies even when the agency is explaining a change in the

agency's interpretation of the statute in question.  "An interpretative rule changing an agency's

---

[8] Defendants' argument with respect to ripeness does not encompass the Audubon Plaintiffs' NEPA claim.  *See* Audubon Mem. at 27.

interpretation of a statute is not magically transformed into a legislative rule.  If the rule is an interpretation of a statute rather than an extra-statutory imposition of rights, duties or obligations, it remains interpretative even if the rule embodies the [agency's] changed interpretation of the statute."  *White*, 7 F.3d at 304 (citation omitted).

Opinion M-37050 does not "create new law," *id.* at 303—rather, it reflects Defendants' legal interpretation of the extent to which "incidental take" is prohibited by the MBTA.  Contrary to Plaintiffs' attempts to portray the state of the law regarding the MBTA as static and settled, questions regarding "incidental take" under the statute have led to disparate treatment in various courts over a period of decades.  Defendants' legal analysis of the MBTA is at most an interpretative rule, and Defendants therefore were not required to provide for notice and comment under the APA.

**B.      The Audubon Plaintiffs' NEPA Claim Also Should Be Dismissed**

The Audubon Plaintiffs do not dispute that challenges to NEPA compliance must be brought under the APA, and that a plaintiff must allege a final agency action for a court to have subject matter jurisdiction to hear the claim.  *See* Defs. Mem. at 39; Audubon Mem. at 28-29. Consequently, the absence of a final agency action here, *see* Section II, *supra*, is also fatal to the Audubon Plaintiffs' NEPA cause of action.

And even if the Court concludes that Plaintiffs have sufficiently alleged that the issuance of Opinion M-37050 was a final agency action, DOI's legal guidance as to the proper interpretation of the MBTA was not a rule, regulation, programmatic statement, and therefore was not a "major federal action" for purposes of NEPA review.  *See* 42 U.S.C. § 4332(2)(C). Contrary to the Audubon Plaintiffs' assertion, Defendants did not ignore DOI's regulations regarding when and how a NEPA analysis must be performed.  *See* Audubon Mem. at 29.  DOI's NEPA regulations regarding "Initiating the NEPA Process"—*see, e.g.*, 43 C.F.R. §§ 46.205

(Actions categorically excluded from further NEPA review); 46.210 (Listing of Departmental categorical exclusions); and 46.215 (Categorical Exclusions: Extraordinary circumstances)—are only applicable if there is a threshold determination that the particular action in question is subject to NEPA in the first place.  *See* 43 C.F.R. § 46.100 ("The proposed action is not subject to the procedural requirements of NEPA if it is exempt from the requirements of section 102(2) of NEPA [42 U.S.C. § 4332(2)]."  Thus, if the underlying action was not a "major federal action" within the meaning of NEPA, there is no need for DOI to consider whether a categorical exclusion exempts the action from NEPA review, *see* 43 C.F.R. § 46.205(c)(1), because the action has not satisfied the minimum requirements to begin the NEPA evaluation.  Similarly, if there is no need to invoke a categorical exclusion to exempt an action from NEPA review, there is also no need to determine whether any of the enumerated "extraordinary circumstances" vitiate the categorical exclusion.  *See* 43 C.F.R. § 46.210 (listing those types of actions categorically excluded from NEPA review "unless any of the extraordinary circumstances in section 46.215 apply"),[9] 43 C.F.R. § 46.215 (listing extraordinary circumstances).

As for the Audubon Plaintiffs' contention that Defendants' overlooked their attempt to include the internal FWS Guidance within the scope of the NEPA claim, the most plausible reading of the Audubon Complaint is that the NEPA claim was aimed at the issuance of Opinion M-37050 alone.  The heading for count three of the Audubon Complaint states that "Defendants Failed to Comply with NEPA in Adopting and Implementing the Memorandum," without any reference to the internal FWS memorandum.  *See* Audubon Compl. ¶ 84.  In addition, while the

---

[9] The fact that "Departmental legal activities including . . . legal opinions" are listed as being categorically excluded from NEPA review unless any of the extraordinary circumstances apply, *see* 43 C.F.R. § 46.210(d), does not mean that every DOI legal opinion automatically qualifies at the threshold as a major federal action for purposes of NEPA.

first sentence of paragraph 87 of the Audubon Complaint references the internal FWS Guidance, the remaining four sentences in that same paragraph allege only that Defendants violated NEPA with respect to their issuance of the M-Opinion, and do not mention the internal FWS Guidance at all.  *See id.* ¶ 87.  Nevertheless, to the extent the Audubon Complaint does allege that Defendants violated NEPA with respect to the internal FWS Guidance as well, the claim should be dismissed for the same reasons as the claim as to the M-Opinion—the internal FWS Guidance does not constitute final agency action on the part of the Defendants, and even if it did, the guidance document does not amount to a major federal action for purposes of NEPA.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendants' opening memorandum of law, the NRDC Complaint, the Audubon Complaint, and the States' Complaint should be dismissed for lack of subject matter jurisdiction and/or for failure to state a claim.

Dated:   New York, New York
         March 22, 2019

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By:      */s/ Andrew E. Krause*
         ANDREW E. KRAUSE
         Assistant United States Attorney
         86 Chambers Street, Third Floor
         New York, New York  10007
         Telephone:  (212) 637-2769
         Facsimile:  (212) 637-2786